UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

JOHN FRANCIS MORAN,

                    Plaintiff,                    Case No. 1:12-cv-614

v.                                        Honorable Gordon J. Quist

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action against Defendants Michigan Department of Corrections, Krick, Trierweiler, and Smith will be dismissed. The Court will allow service of the complaint against Defendant Adamson.

**Factual Allegations**

Plaintiff John Francis Moran is a state prisoner incarcerated by the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF).  He sues the MDOC and the following employees of DRF: Chaplain S. Adamson, Assistant Deputy Warden (ADW) Laura Krick, Deputy Warden Toney Trierweiler, and Warden Willie Smith.

Plaintiff is a member of the Native American Traditional Ways group at DRF.  He contends that the MDOC has implemented a policy that burdens his right to practice his religion by preventing him from participating in a religious ceremony.  MDOC Policy Directive 05.03.150 provides that each recognized religious group in a prison facility "shall be allowed a weekly religious service if resources permit; however, a service is not required to be conducted . . . if there are less than five prisoners within the same security level of that institution who actively participate in the religious activities of a group."  *Id.* at ¶ X (Sept. 20, 2007).

Plaintiff also alleges that Chaplain Adamson cancelled the regularly-scheduled Native American Traditional Ways religious service.  Plaintiff filed a grievance regarding Adamson's conduct on April 8, 2011. (*See* Grievance No. DRF-11040058820B, docket #1-1.) Therein, Plaintiff asserted that Adamson cancelled future services on March 24, 2011, and that as a result, Plaintiff was unable to attend a service for the following two Saturdays.  Plaintiff argued that the service did not conflict with any other religious services, and that the cancellation violated his right to practice his religion.  ADW Krick responded to the grievance, noting that "Plaintiff was the only participant in the Native American Traditional Ways group."  (*Id.* at Page ID#7.)  Krick

- 2 -

cited the five-participant rule in Policy Directive 05.03.150 ¶ X.[1]  She also quoted the following rule from DRF operating procedure 05.03.105 ¶ J:

> "[A] religious service or activity may be established when requested by at least five prisoners who are able to actively participate.  A religi[o]us service or activity may be discontinued where there are less than five prisoners who are actively participating.  After 90 days groups that request to be reinstated will be re-evaluated."

(docket #1-1, Page ID#7.)  Both Krick and Deputy Warden Trierweiler signed the grievance response.

Plaintiff appealed the grievance response to step II of the grievance process, arguing that a service was necessary for him to "smudge" and to pray.  (*Id.* at Page ID#8.)  Warden Smith affirmed the initial determination.  Plaintiff then appealed to step III of the grievance process, and it appears that his appeal was rejected as untimely on May 29, 2012.  (*Id.* at Page ID#10.)

Plaintiff alleges that the religious service was cancelled for ninety days, "even though there [were] ample inmates requesting to be put on call-out for [the] Native American Traditional Ways Religious service and study group."  (Compl. 3, docket #1.)  He contends that the group has "always maintained [its] position on Saturday morning for service," and that there were "at all times enough herbs and ceremonial items to conduct a service"; however, he was not allowed access to these items to conduct a service.  (*Id.*)

As relief, Plaintiff seeks compensatory and punitive damages, as well as an injunction requiring that each MDOC facility:  (1) allow Native Americans to hold services twice a week "with all sacred herbs and items necessary for holding their ceremony including a drum and rattle"; (2) make available money from the Prisoner Benefit Fund to purchase supplies and teaching materials;

---

[1] There appears to be a typo in the grievance response, as it refers to Policy Directive "05.03.105" instead of 05.03.150.  (*See* docket #1-1, Page ID#7.)

(3) provide a spiritual volunteer; (4) make available an area of land, off limits to other inmates, for the purpose of creating a "Sacred Circle" in which to practice Native American ways; (5) allow individual inmates to access the Sacred Circle during "open yard" in the morning and as needed in the evening; and (6) allow Native Americans to hold two yearly feasts that include smudging and a meal.  (Compl. 4, docket #1.)

## Discussion

I.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility

- 4 -

standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff fails to make specific factual allegations against Defendants Krick, Trierweiler and Smith, other than that they denied a grievance concerning Defendant Adamson's decision to cancel the Native American religious service. A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff has failed to allege that Defendants Krick, Trierweiler or Smith, engaged in any active unconstitutional behavior. Accordingly, they will be dismissed because he fails to state a claim against them.

II.     Immunity

Plaintiff may not maintain a § 1983 action against the Michigan Department of Corrections. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Thus, the Court will dismiss the Michigan Department of Corrections.

**Conclusion**

In light of the foregoing, the Court will dismiss Defendant MDOC because it is immune from suit. Also, the Court will dismiss Defendants Krick, Trierweiler and Smith for failure

to state a claim.  With respect to Defendant Adamson, however, the Court concludes that dismissal is not warranted at this time.  Therefore, the Court will allow service of the complaint against him.

An Order consistent with this Opinion will be entered.


Dated:  November 8, 2012                           _____/s/ Gordon J. Quist_____
                                                                    GORDON J. QUIST
                                                      UNITED STATES DISTRICT JUDGE